MARC A. PILOTIN
Regional Solicitor
ANDREW J. SCHULTZ
Counsel for Wage and Hour
SONYA SHAO (CSBN 300832)
Senior Trial Attorney
NISHA PAREKH (CSBN 318393)
KARINA WEGMAN-SCHAAFF (DCBN 1618649)
Trial Attorneys
UNITED STATES DEPARTMENT OF LABOR
312 N. Spring Street, Suite 720
Los Angeles, CA 90012-4701
Telephone: 213-894-3990
Parekh.nisha@dol.gov
*Attorneys for Plaintiff Julie A. Su,*
*Acting United States Secretary of Labor*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JULIE A. SU,
Acting Secretary of Labor,
United States Department of Labor,

Plaintiff,

v.

L & Y FOOD, INC., a California corporation; MOON POULTRY, INC., a California corporation; JRC CULINARY GROUP, INC., a California corporation; FU QIAN CHEN LU, an individual; BRUCE SHU HUA LOK, an individual; and RYAN ZHONG LU, an individual,

Defendants.

Case No. 2:24-cv-02606

**MEMORANDUM OF POINTS AND AUTHORITIES ISO SECRETARY'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

Date:
Time:

Judge: Judge Not Yet Assigned

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 1**

**II. FACTUAL BACKGROUND ........ 2**

A. Defendants are a joint enterprise that processes poultry and ships poultry and other goods in interstate commerce. ........ 2

B. Minors were employed to debone poultry, a prohibited hazardous occupation for minors under the FLSA. ........ 3

C. WHD has well established procedures on issuing hot goods objections and ensuring hot goods do not enter the stream of commerce. ........ 4

D. Defendants moved hot goods out of Moon Poultry over WHD's objection, refused to disclose an inventory of where these goods are, and have not denied that they have shipped these goods or delivered them for shipment. ........ 4

**III. ARGUMENT ........ 7**

A. The Acting Secretary is likely to succeed on the merits. ........ 8

1. Defendants are subject to the FLSA and must be bound by an injunction. ........ 9

2. Defendants Moon Poultry, JRC, Chen Lu, Ryan Lu, and Bruce Lok Employed Oppressive Child Labor in Violation of the FLSA. ........ 10

3. Defendants have possessed hot goods and are subject to the FLSA's child labor hot goods provision. ........ 12

4. Given Defendants' conduct, the Acting Secretary is likely to succeed in proving a disgorgement remedy is necessary. ........ 14

5. Defendants interfered with the Acting Secretary's investigation into whether hot goods were shipped or delivered for shipment into commerce. ........ 15

B. Defendants' employees, the Acting Secretary, and the public will suffer irreparable harm absent a temporary restraining order. ........ 16

1. Defendants' employment of minors in oppressive child labor inherently causes irreparable harm to the minors and to the public. ........ 16

2. Defendants' introduction of hot goods into the stream of interstate commerce causes irreparable harm to the Acting Secretary, employees, and the public. ........ 17

3. Defendants' interference with WHD's child labor hot goods investigation causes irreparable harm to the Acting Secretary. 18

C. The balance of equities strongly favors the Acting Secretary. ........ 19

**IV. CONCLUSION ........ 20**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acosta v. RK Apparel Inc.*,
2018 WL 1942400 (C.D. Cal. Mar. 15, 2018)....................17

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)....................7

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
643 F.3d 1165 (9th Cir. 2010)....................16

*Bonnette v. Cal. Health & Welfare Agency*,
704 F.2d 1465 (9th Cir. 1983)....................9

*Cal Pharms. Ass'n v. Maxwell-Jolly*,
572 F.3d (9th Cir. 2009)....................19

*Citicorp Industrial Credit, Inc. v. Brock*,
483 U.S. 27 (1987).................... 12, 13, 14, 17

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
340 F.3d 810 (9th Cir. 2003)....................7

*Danneskjold v. Hausrath*,
82 F.3d 37 (2d Cir. 1996)....................18

*F.T.C. v. Consumer Def., LLC*,
926 F.3d 1208 (9th Cir. 2019)....................8

*Flynt Distrib. Co., Inc. v. Harvey*,
734 F.2d 1389 (9th Cir. 1984)....................8

*Ford v. Ely Group, Inc.*,
621 F. Supp. 22 (W.D. Tenn. 1985)....................13

*Herman v. Fashion Headquarters, Inc.*,
992 F. Supp. 677 (S.D.N.Y. 1998)....................17

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009)....................8

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
563 U.S. 1 (2011)....................15

*Lambert v. Ackerley*,
180 F.3d 997 (9th Cir. 1999)....................9

*Lenroot v. Interstate Bakeries Corp.*,
146 F.2d 325 (8th Cir. 1945)....................16

*Marshall v. Chala Enters., Inc.*,
645 F.2d 799 (9th Cir. 1981)....................19

*Martin v. Funtime, Inc.*,
963 F.2d 110 (6th Cir. 1992) ....................16
*Mitchell v. Robert DeMario Jewelry, Inc.*,
361 U.S. 288 (1960).................... 14, 15
*Odessa Union Warehouse Co-op*,
833 F.2d ....................16
*Perez v. BabyVision Inc.*,
No. 14-CV-7821 KMK, 2014 WL 5280392 (S.D.N.Y. Sept. 30, 2014)............15
*Perez v. Jie*,
2014 WL 1320130 (W.D. Wash Mar. 31, 2014) ....................19
*Prince v. Mass.*,
321 U.S. 158 (1944)....................10
*Save Our Summers v. Wash. Dep't of Ecology*,
132 F. Supp. 2d 896 (E.D. Wash. 1999)....................16
*Sec'y of Lab., United States Dep't of Lab. v. Valley Wide Plastering Constr. Inc.*,
2021 WL 410873 (D. Ariz. Feb. 5, 2021).................... 7, 16, 19
*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
739 F.2d 1415 (9th Cir. 1984) ....................7
*Trailer Train Co. v. State Bd. of Equalization*,
697 F.2d 860 (9th Cir. 1983) .................... 8, 16
*U.S. v. Darby*,
312 U.S. 100 (1941).................... 13, 14
*U.S. v. Estate Preservation Servs*,
202 F.3d 1093 (9th Cir. 2000) .................... 8, 16
*United States v. Diapulse Corp. of Am.*,
457 F.2d 25 (2d Cir.1972)....................16
*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)....................7

Statutes

29 U.S.C. § 202....................16
29 U.S.C. § 203(l) ....................11
29 U.S.C. § 211(a) .................... 7, 8, 13, 15
29 U.S.C. § 212(c) .................... 8, 10, 11
29 U.S.C. § 217.................... 8, 13, 16
29 U.S.C. §§ 211, 212(a) ....................2
29 U.S.C. § 212(a) .................... 12, 13

Rules

Fed. R. Civ. P. 65 .......... 7

Regulations

29 C.F.R. Part 570 .......... 10, 11
29 C.F.R. § 570.105 .......... 10
29 C.F.R. § 570.61 .......... 1
29 C.F.R. § 570.61(a) .......... 11
29 C.F.R. § 570.61(a)(5) .......... 11

## I. INTRODUCTION

Given the insidious and irreparable harms related to oppressive child labor, the Fair Labor Standards Act ("FLSA") prohibits the shipment or delivery for shipment into commerce of goods produced at locations where such labor occurs. Flouting this strict bar, since the Department's Wage and Hour Division ("WHD") discovered oppressive child labor at Defendants' Irwindale food processing facility on March 20, 2024, Defendants have moved goods out of that location and refuse to confirm that this contraband has not been shipped or otherwise delivered into commerce. Defendants' unlawful and evasive conduct justifies the urgent injunctive relief the Acting Secretary seeks.

During its March 20 civil search warrant execution, WHD found that the companies located at the search warrant execution site, namely Defendants JRC Culinary Group, Inc. ("JRC") and Moon Poultry, Inc., and their managing agents or owners Defendants Chen Lu, Ryan Zhong Lu, and Bruce Shu Hua Lok, have subjected minor employees to prohibited and hazardous poultry processing work. Instead of being in school, children younger than eighteen-years-old stand on their feet all day in a chilled cutting room surrounded by raw chicken, using knives they must constantly sharpen, to cut and debone chicken, which is a prohibited hazardous occupation for minors. 29 C.F.R. § 570.61.

Since March 20, WHD has notified Defendants on several occasions that it objects to Defendants' movement of goods from the Irwindale facility, including poultry and other comingled goods, tainted by oppressive child labor. Nevertheless, Defendants have continued to move these goods and refused to provide complete and accurate information to WHD on the locations of those goods.

This TRO request is urgent. Accordingly, the Acting Secretary requests that the Court immediately issue a TRO barring continued oppressive child labor; enjoining the shipment of hot goods or delivering such goods for shipment, and

rectifying any previous shipment or delivery for shipment of such goods; and prohibiting interfering with any investigation by the Acting Secretary.[1]

## II. FACTUAL BACKGROUND

### A. Defendants are a joint enterprise that processes poultry and ships poultry and other goods in interstate commerce.

Defendant Chen Lu operates several poultry processing facilities and poultry, meat, and food distribution operations located in Los Angeles County, California. *See* Declaration of Kimchi Bui ("Bui Decl."), ¶ 6. One of Chen Lu's companies, Defendant L & Y, picks up poultry processed by Defendants Moon Poultry and JRC (also referred to herein as "Moon Poultry/JRC") at their business location in Irwindale, CA ("Irwindale location" or "Irwindale facility"), stores this poultry at L & Y's facilities in Monterey Park, CA, and then sells these goods into the stream of commerce. *See* Bui Decl., ¶ 11.

Defendants JRC and Moon Poultry are owned by Chen Lu's eighteen-year-old son Defendant Ryan Lu and Defendant Bruce Lok, respectively; however, Defendant Chen Lu directs operations at both companies. *See* Bui Decl., ¶¶ 6, 8, and 10. For instance, Yuritza Leon-Zamacona ("Leon-Zamacona"), a manager at Moon Poultry, reports directly to Chen Lu and views him as her "boss." *See* Declaration of Marie Koshkarian ("Koshkarian Decl."), ¶ 4. Further demonstrating his control, Defendant Chen Lu decides whether Moon Poultry employees get raises, and two of his companies—A1 Meat Solutions, Inc. ("A1 Meat") and Defendant L & Y—own Moon Poultry's products. Koshkarian Decl., ¶ 4.

The vast majority of goods leaving Moon Poultry and JRC go directly to L & Y and A1 Meat. Bui Decl., ¶ 14. L & Y distributes poultry and other food

---

[1] The current proceeding concerns *only* Defendants' violations of 29 U.S.C. §§ 211, 212(a) related to their employment of oppressive child labor at Moon Poultry. WHD continues to investigate the full scope of Defendants' potential FLSA violations.

products across state lines. *See* Bui Decl., ¶ 15.

**B. Minors were employed to debone poultry, a prohibited hazardous occupation for minors under the FLSA.**

Defendant Moon Poultry employs workers to debone and cut poultry using sharp knives. *See* Bui Decl., ¶ 13; Declaration of Manuel Ontiveros ("Ontiveros Decl."), ¶ 5. In addition to deboning chicken, Moon Poultry also employs workers to unpack pallets of boxes of uncut poultry from delivery trucks, take them to the cutting floor for processing, repack them after they have been processed, move them into freezers for storage, and load trucks with processed chicken. Bui Decl., ¶ 13. Additionally, Defendants store other goods at Moon Poultry and JRC's Irwindale facility, such as rice, fish, and pork. *See* Koshkarian Decl., ¶¶ 7, 9.

WHD determined that, since at least October 2023, oppressive child labor has been employed at the Irwindale facility. Ontiveros Decl., ¶¶ 6-11. At least two of the minors WHD has identified worked within the past two months as chicken deboners. Bui Decl., ¶ 16-17; *see also* Ontiveros Decl., ¶¶ 6-11. On March 20, 2024, WHD identified a minor deboning poultry for Moon Poultry/JRC while executing a civil search warrant to investigate their Irwindale facility. Ontiveros Decl., ¶¶ 6-7. WHD immediately notified Chen Lu and Moon Poultry of this instance of oppressive child labor. Bui Decl., ¶¶ 16-17. The same day, WHD also disclosed to Chen Lu and Moon Poultry another minor found on Moon Poultry's deboner payroll records for the pay period most recent to the warrant execution. Bui Decl., ¶¶ 16-17; *see also* Ontiveros Decl., ¶¶ 6-11, Exh. 1 (paystub minor produced to WHD showed minor worked at Moon Poultry as recently as March 8, 2024). Moon Poultry manager Leon-Zamacona confirmed that the two minor deboners WHD identified were current employees. Bui Decl., ¶ 19.

WHD informed Defendants that minors under 18 years of age cannot work in hazardous occupations like deboning chicken. Bui Decl., ¶ 20. Furthermore, since there was confirmed oppressive child labor, WHD determined that the goods

made at Moon Poultry and JRC were contraband that could not be shipped or delivered for shipment into commerce (*i.e.*, "hot goods"). Bui Decl., ¶ 21.

**C. WHD has well established procedures on issuing hot goods objections and ensuring hot goods do not enter the stream of commerce.**

When hot goods have been identified, the Acting Secretary's representatives notify the violating parties about the Acting Secretary's determination as to why the goods are "hot" and object to the shipment of those goods by requesting that their shipment in commerce be restrained voluntarily. *See* Declaration of Michael Eastwood ("Eastwood Decl."), ¶ 4. After discussion with the employer, representatives from the Department may also notify all intended recipients of the goods, known as downstream purchasers, of the Department's investigative findings, offering the employer an opportunity to participate in those communications. *Id*. At ¶ 5. By providing notice to all potential shippers, the Department seeks to obtain voluntary compliance from all interested parties in preventing the entry of hot goods into interstate commerce. *Id*. At ¶ 6. Where an employer works with the Department to restrain shipment of hot goods, so these do not enter commerce, the parties are usually able to resolve matters without litigation or injunctive relief. *See Id*. at ¶ 8. The Department has not been able to avoid litigation or pursuit of injunctive relief here, however, given Defendants' unrelenting interference and opacity.

**D. Defendants moved hot goods out of Moon Poultry over WHD's objection, refused to disclose an inventory of where these goods are, and have not denied that they have shipped these goods or delivered them for shipment.**

In the regular course of business, Chen Lu relocates goods produced at the Irwindale facility—goods that he and his businesses, L & Y and A1, own—to L & Y or A1, and then ships or delivers for shipment those goods in interstate

commerce. Bui Decl., ¶¶ 14-15. As explained below, since March 20, 2024, the last date where oppressive child labor was employed at the Irwindale facility, Defendants have removed hot goods, refused to account for those goods, and not disclosed whether goods have been shipped or delivered for shipment into interstate commerce.

On March 20, 2024, Wage and Hour notified Chen Lu and Moon Poultry/JRC supervisor Leon-Zamacona that the Irwindale facility's products are hot and asked them to voluntarily refrain from shipment. Bui Decl., ¶ 22. That same day, WHD gave Chen Lu a formal letter asking Moon Poultry and JRC to voluntarily refrain from shipping hot goods from the Irwindale facility, because, as noted above, Chen Lu's companies Defendant L & Y and A1 own Moon Poultry's products. Koshkarian Decl., ¶ 4. Defendant Chen Lu verbally agreed to refrain from shipping or moving Moon Poultry's goods, *on behalf of Moon Poultry, JRC*, and himself, showing his control over Moon Poultry and JRC. Bui Decl., ¶ 23.

However, Defendants Moon Poultry, JRC, and Chen Lu reneged. On March 21, 2024, WHD went back to the Irwindale facility to determine whether Defendants Moon Poultry, JRC, and Chen Lu had adhered to their commitment to voluntarily refrain from shipping hot goods. Koshkarian Decl., ¶ 6. Upon entry, WHD discovered that 794 boxes of processed chicken and seven 1500-pound bins of chicken had been removed from the Irwindale facility. Koshkarian Decl., ¶¶ 5-6. That same day, WHD issued an objection letter to Defendant L & Y and A1 Meat and asked them to voluntarily agree not to ship or move any of the hot goods, since WHD understood these companies to own the goods at the Irwindale facility and suspected the hot goods had moved to L & Y or A1, given the businesses' regular practices. Bui Decl., ¶ 24, Exh. 9; Shao Decl., ¶ 6; Koshkarian Decl., ¶ 4.

The next day, on March 22, 2024, WHD went to Defendant L & Y to inspect whether poultry from Defendants Moon Poultry and JRC had indeed been delivered to L & Y. Koshkarian Decl., ¶ 7. There, Defendant L & Y's front office

staff confirmed that Defendant L & Y had received a shipment of poultry from Moon Poultry the day prior. *Id.* ¶ 8. Before WHD could do anything further to investigate whether Defendants had moved or shipped the contraband hot goods from Moon Poultry over WHD's hot goods objection, Chen Lu arrived and refused to give WHD access to L & Y's poultry inventory or answer any questions about the goods. *Id.*

Four days after goods had been removed from the Irwindale facility and three days after refusing to allow WHD to determine whether such goods had been moved or shipped into commerce, on March 25, 2024, Defendant Chen Lu signed a form voluntarily agreeing to refrain from shipping hot goods. Bui Decl., ¶ 25, Exh. 9. However, yet again, this assurance proved illusory. On Tuesday, March 26, 2024, Moon Poultry manager Leon-Zamazona confirmed to WHD that *all* of the hot goods that WHD objected to on March 20, 2024, were moved out of Moon Poultry. Bui Decl., ¶ 27. Documentary evidence confirmed that Moon Poultry continued to *process and move hot goods out of Moon Poultry* after WHD discovered oppressive child labor on March 20 and within the thirty-day timeframe, notwithstanding Defendant Chen Lu's verbal and written promises not to move the goods. Bui Decl., ¶ 26, Exh. 11.

On March 26, 2024, Defendant Moon Poultry advised the Acting Secretary that instead of disclosing whether it was continuing to produce and ship hot goods and to where, it would simply shut down, which the Acting Secretary stressed is *not* the same as agreeing to refrain from shipment. Shao Decl., ¶ 14-15 & Exhibit 3. On March 27, 2024, WHD went to Defendant Moon Poultry and discovered that it had been shut down. Bui Decl., ¶ 28. The same day, Attorney Greg Patterson, attorney for Defendants Chen Lu and L & Y, informed WHD that goods had been moved yet again to another location. Shao Decl., ¶ 17, Ex. 3. However, Chen Lu and the other Defendants have refused to disclose or confirm to WHD where all the Moon Poultry hot goods are. Bui Decl., ¶ 29; Shao Decl., ¶¶ 17-19 & Ex. 3.

Indeed, Moon Poultry's counsel has suggested that at least some of the goods are no longer within Defendants' control. *See* Shao Decl., Ex. 3.

Despite numerous, daily requests and a four-hour meeting on March 25, 2024, in which WHD asked Defendants to simply agree to refrain from shipping and disclose to where they moved, shipped, or delivered the hot goods for shipment, Defendants refuse to inform WHD where the hot goods have been moved or shipped to, obstructing Wage and Hour's ability to notify customers who may have received hot goods. Bui Decl., ¶ 22-25, 29; *see also* Shao Decl., ¶¶ 4-19, Ex. 2-3.

**III. ARGUMENT**

The Acting Secretary may obtain a temporary restraining order or preliminary injunction where (1) she is likely to prevail on the merits or has raised "serious questions going to the merits" of the legal issue; (2) she will likely suffer irreparable injury if an injunction is not granted; (3) the balance of equities and hardships tips in her favor; and (4) the public interest lies in her favor. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21-22 (2008)); *see also* Fed. R. Civ. P. 65. Preliminary relief is appropriate where "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Cottrell*, 632 F.3d at 1131 (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

A party need not show irreparable harm to obtain preliminary injunctive relief if the conduct to be enjoined violates a federal statute that specifically provides for injunctive relief. *See Sec'y of Lab., United States Dep't of Lab. v. Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *3 (D. Ariz. Feb. 5, 2021) (granting the Secretary's motion for preliminary injunction to remedy 29

U.S.C. § 211(a) recordkeeping violation because "in a case involving statutory enforcement, where the applicable statute authorizes injunctive relief, the traditional irreparable injury showing is not required") (quoting *F.T.C. v. Consumer Def., LLC*, 926 F.3d 1208, 1214 (9th Cir. 2019)). Here, 29 U.S.C. § 217 provides that "district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title." Accordingly, the Court presumes the existence of irreparable injury. In such circumstances, the Secretary need only prove likelihood of success on the merits, as Congressional action has appropriately set the nature of the injury to be avoided, balanced the hardships, and accounted for the public interest. *U.S. v. Estate Preservation Servs*, 202 F.3d 1093, 1098 (9th Cir. 2000) (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983), *cert. denied*, 464 U.S. 846 (1983)).[2] Although not required under settled precedent, the Acting Secretary nevertheless addresses all elements generally required to show that a temporary restraining order is necessary.

**A. The Acting Secretary is likely to succeed on the merits.**

The FLSA prohibits employing oppressive child labor (29 U.S.C. § 212(c)); shipping or delivering for shipment into commerce any goods produced in an establishment where, within 30 days prior to the removal of such goods, such employment occurred (*id.* § 212(a)); and interfering with the Acting Secretary's right to investigate potential FLSA violations and enforce the FLSA (*id.* § 211(a)).

---

[2] Additionally, where a party seeks a temporary restraining order or preliminary injunction, the court applies relaxed evidentiary standards for admissibility. A district court may "consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

Here, Defendants have flouted these obligations, and the voluminous evidence shows that the Acting Secretary is likely to succeed in showing that they did.

**1. Defendants are subject to the FLSA and must be bound by an injunction.**

Defendants fall within the ambit of the FLSA on two grounds: (1) they employed child labor or (2) they are, at the least, producers and/or dealers prohibited from shipping or delivering for shipment contraband into commerce.

On being employers, the Ninth Circuit is clear that "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA], and is subject to liability." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (citation omitted); *see also Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) ("[r]egardless of whether [defendants] are viewed as having had the power to hire and fire, their power over the employment relationship by virtue of their control over the purse strings was substantial"). As discussed in Section II.A. *supra*, Moon Poultry and JRC, and their owners Bruce Lok and Ryan Lu, have direct ownership over the poultry processing business in Irwindale where WHD encountered a minor deboning poultry on March 20, 2024. Also as discussed in Section II.A. *supra*, Chen Lu, however, owns the poultry and other goods at Moon Poultry/JRC, including the poultry processed by Moon Poultry/JRC employees and other goods for sale by these companies, and ships these goods to businesses he directly owns in the regular course of business, including Defendant L & Y. He has controlling authority over Moon Poultry/JRC employee pay rates, and is the "boss" of their supervisor, Leon-Zamacona, who believes Chen Lu owns Moon Poultry. During WHD's March 20, 2024, search warrant execution, Chen Lu voluntarily agreed to refrain from shipping Moon Poultry and JRC's hot goods *on behalf of* these Defendants. Chen Lu is clearly the controlling individual over all the corporate

Defendants, including Moon Poultry/JRC, who employed oppressive child labor, and the Acting Secretary is likely to succeed on the merits of establishing Chen Lu, Moon Poultry, and JRC, and their direct owners, Ryan Lu (Chen Lu's eighteen-year-old son), and Bruce Lok as employers of the workers under FLSA Section 3(d).

Further, Defendants are plainly producers and/or dealers, which are defined broadly for purposes of the FLSA's child labor hot goods prohibition. A producer is "one who engages in producing, manufacturing, handling or in any other manner working on goods in any State," while a dealer is "anyone who deals in goods . . . , including persons engaged in buying, selling, trading, distributing, delivering" goods, such as "middlemen, factors, brokers, commission merchants, wholesalers, retailers and the like." 29 C.F.R. § 570.105. Here, Defendant Chen Lu owns and operates a sprawling enterprise that produces and deals in food products, working with and through his individual co-Defendants Ryan Lu and Bruce Lok, who own and operate components thereof. *See* Section II.A. *infra*. Likewise, corporate Defendants Moon Poultry and JRC are producers, and the evidence amassed to date shows Defendant L & Y to be at least a dealer of food products. *Id.*

### 2. Defendants Moon Poultry, JRC, Chen Lu, Ryan Lu, and Bruce Lok Employed Oppressive Child Labor in Violation of the FLSA.

The Acting Secretary is likely to prevail in establishing that Defendant Moon Poultry, JRC, Chen Lu, Ryan Lu, and Bruce Lok's employment of minors violated the FLSA's oppressive child labor prohibitions. 29 U.S.C. §§ 212(c), 15(a)(4); 29 C.F.R. Part 570. This prohibition serves to protect minors from the evils of the "crippling effects of child employment." *Prince v. Mass.*, 321 U.S. 158, 168 (1944). There is no question that "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies . . ." *Id.*

Prohibited "oppressive child labor" is defined, in relevant part, as:

> [A] condition of employment under which (1) any employee under the age of sixteen years is employed by an employer … in any occupation, or (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or well-being . . . .

29 U.S.C. § 203(l). The Acting Secretary establishes a violation of the FLSA's child labor prohibition by showing: (1) the minor employee's age; (2) that the minor performed work for an employer, other than a parent; and (3) that the work constituted "oppressive child labor." 29 U.S.C. § 212(c). Department of Labor regulations limit when and under which conditions employers may employ minors without employing oppressive child labor. *See* 29 C.F.R. Part 570. Defendants have repeatedly and willfully endangered their minor employees by violating these regulations.

Under Section 3(l) of the FLSA, and 29 C.F.R. Part 570, minors between the ages of 16 and 18 are prohibited from performing work in certain occupations which the Secretary of Labor has deemed to be "particularly hazardous" or "detrimental to their health or well-being." *See* 29 C.F.R. § 570.61(a). Such work includes "all boning occupations," defined as the removal of bones from meat cuts. 29 C.F.R. § 570.61(a)(5). Defendant Moon Poultry, JRC, Chen Lu, Ryan Lu, and Bruce Lok's employment of minors between the ages of 16 and 18 years old to debone poultry is a facial violation the FLSA's prohibitions against oppressive child labor.

As discussed in Section II.B. *supra*, the Acting Secretary witnessed a minor under the age of eighteen deboning poultry at Moon Poultry/JRC on March 20, 2024, obtained identification showing his age, and verified the authenticity of the identification through the issuing agency. As further discussed in Section II.B. *supra*, the Acting Secretary spoke to a second minor under the age of eighteen who

worked as a deboner for Moon Poultry until just prior to March 20, obtained his identification showing his age, and verified his identification with the issuing government agency. The facts indisputably show that Defendants Moon Poultry, JRC, Chen Lu, Ryan Lu, and Bruce Lok have violated the FLSA's child labor provisions.

**3. Defendants have possessed hot goods and are subject to the FLSA's child labor hot goods provision.**

Given Moon Poultry and JRC's employment of oppressive child labor as of March 20, 2024, goods produced at that location from that date through April 19, 2024 cannot be removed or shipped into commerce. Defendants have flouted this prohibition, removing goods from the facility since March 20, 2024 (*see, e.g.* Koshkarian Decl. ¶¶ 5-10); delivering some of these goods to Defendant L & Y's facility, from which interstate shipments are made, offering shifting stories as to where the goods are, and refusing to say whether they have shipped these goods into commerce. Bui Decl., ¶¶ 15, 26-29; Shao Decl., ¶¶ 10, 14, 17-19. Worse, Defendants have moved the goods after Defendant Chen Lu twice promised not to do so. Bui Decl., ¶¶ 15, 26-29; Shao Decl., ¶¶ 15-19. These facts show that the Acting Secretary is likely to succeed in proving that § 212(a) applies to Defendants and that an injunction is necessary to bar them from tainting commerce with contraband.

The FLSA prohibits producers, manufacturers, and dealers from shipping or delivering in interstate commerce, or delivering for shipment in interstate commerce, any goods produced in an establishment where "oppressive child labor has been employed" within thirty days of shipping those goods. 29 U.S.C. § 212(a). This strict provision is crucial to vindicating the FLSA's broad regulatory purpose "that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce." *Citicorp Industrial*

*Credit, Inc. v. Brock*, 483 U.S. 27, 37 (1987) (citing *U.S. v. Darby*, 312 U.S. 100, 115 (1941)).

Prohibiting the shipment of goods produced in violation of the FLSA serves several fundamental statutory purposes. In addition to ensuring that employers who violate the FLSA do not enjoy an unfair competitive advantage over their law-abiding peers, *Ford v. Ely Group, Inc.*, 621 F. Supp. 22, 25 (W.D. Tenn. 1985), the hot goods provision serves to incentivize employers to adhere to the FLSA's requirements. *See Darby*, 312 U.S. at 109–110, 117. The hot goods provision also serves to protect the interests of those workers who have suffered substandard working conditions during the production of such goods. Excluding hot goods from interstate commerce is more than a simple enforcement mechanism to achieve other statutory aims: it is itself one of the central purposes of the FLSA. *See Citicorp*, 483 U.S. at n.8.

The Acting Secretary is charged with enforcing the provisions of the FLSA. *See* 29 U.S.C. § 211(a). If the employer and intended recipients refuse to restrain shipment, the FLSA expressly provides that the Court may order the parties to do so. *See* 29 U.S.C. § 217.

In this matter, and as set forth above, there is overwhelming evidence of child labor violations, rendering the products produced by Defendants Moon Poultry, JRC, Chen Lu, Bruce Lok, and Ryan Lu "hot"—including any other products with which these products were comingled—within the meaning of Section 12 of the FLSA. Because at least Defendants' poultry products are now considered "contraband," *see Citicorp*, 483 U.S. at 39 ("'Hot goods' are not inherently dangerous, but Congress has determined that they are contraband nonetheless"), they are forbidden by law from entering interstate commerce. *See* 29 U.S.C. §§ 212(a), 215(a).

**4. Given Defendants' conduct, the Acting Secretary is likely to succeed in proving a disgorgement remedy is necessary.**

Given Defendants' movement of hot goods, including delivery to a location from which goods are shipped into commerce; and their abject refusal to disclose where all these goods are, the Acting Secretary will likely succeed in proving that disgorgement of ill-gotten gains is appropriate. Given Defendants' intentional evasiveness, Disgorgement is necessary as preliminary injunctive relief to deter and remedy violations, given the irreparable harm of having contraband enter commerce. *See*, *infra*, III.B.2.

Disgorging funds obtained from the sale of Section 12(a) hot goods advances the purposes of the FLSA. *Mitchell v. Robert DeMario Jewelry, Inc*., 361 U.S. 288, 291-92 (1960) ("When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of statutory purposes."). A manufacturer, producer, or dealer who ships hot goods in violation of Section 12(a) creates the types of harm with which Congress was concerned, specifically by perpetuating detrimental labor conditions prohibited by Section 12(c), burdening commerce, and having an unfair commercial advantage over competing businesses that follow the law. By requiring the disgorgement of the ill-gotten gains from the sale of hot goods, a district court removes the economic advantages gained by employing oppressive child labor and/or dealing in illicit goods tainted by oppressive child labor. This also discourages business models that rely on oppressive child labor directly or in their supply chains. Thus, the disgorgement of ill-gotten gains from the sale of Section 12(a) hot goods corrects the harm to the channels of commerce and to competition, see *Citicorp*, 483 U.S. at 36 n.8 ("'[I]nterstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard

labor conditions, which competition is injurious to the commerce.'") (quoting *Darby*, 312 U.S. at 115).

### 5. Defendants interfered with the Acting Secretary's investigation into whether hot goods were shipped or delivered for shipment into commerce.

The Acting Secretary is likely to prevail in proving that Defendants unlawfully interfered with the Acting Secretary's investigation. The FLSA grants the Secretary of Labor broad authority to investigate employers. 29 U.S.C. § 211(a). The Secretary's ability to uphold the FLSA "relies . . . upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting *Robert DeMario Jewelry*, 361 U.S. at 292). Employee cooperation is essential to the Acting Secretary's enforcement. Indeed, the provision granting the Secretary authority to conduct investigations also directs the Secretary to seek injunctive relief to enjoin employers from impeding any such investigation. *See* 29 U.S.C. § 211(a); *Perez v. BabyVision Inc.*, No. 14-CV-7821 KMK, 2014 WL 5280392, at *2 (S.D.N.Y. Sept. 30, 2014) (enjoining defendants from violation Section 11(a) or obstructing the Secretary's investigation "in any way," including "instructing any individual not to speak to representatives of the Secretary"); *Perez v. Abbas*, No. 5:13-CV-04208-EJD, 2015 WL 2250436, at *10 (N.D. Cal. May 13, 2015) (same).

Despite repeatedly admitting to having removed child labor hot goods from Moon Poultry, and despite WHD's objections to shipment or delivery of shipment, repeated requests for the whereabouts of the products, Defendants have refused to disclose any records or clear, verifiable information about what Moon Poultry hot goods were moved, to where, and what ill-gotten profits Defendants earned from movement of these goods. Section II.D., *supra*. As such, the Acting Secretary is likely to succeed on her claims that Defendants have and continue to interfere with

her hot goods investigation, in violation of Section and 11(a) of the FLSA.

**B. Defendants' employees, the Acting Secretary, and the public will suffer irreparable harm absent a temporary restraining order.**

As stated above, because the Acting Secretary brings this enforcement action under Section 217 of the FLSA, which specifically authorizes injunctive relief, she does not need to demonstrate irreparable injury. *See Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *3. Nevertheless, a temporary restraining order is crucial to prevent irreparable harm to Defendants' employees, including those under 18 years of age, the Acting Secretary, and the public. Indeed, "[t]he purpose of issuing an injunction against future violations [of the FLSA] is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations." *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (citation omitted). Here, a temporary restraining order is central to preventing irreparable harm.

**1. Defendants' employment of minors in oppressive child labor inherently causes irreparable harm to the minors and to the public.**

Defendants' unlawful employment of oppressive child labor, in and of itself, causes irreparable harm, as determined by Congress. *See Odessa Union Warehouse Co-op*, 833 F.2d at 175; *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010); *Estate Preservation Servs.*, 202 F.3d at 1098 (citing *Trailer Train Co.*, 697 F.2d at 869; *see also United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 27 (2d Cir.1972) ("[T]he function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants."). The FLSA's remedial purpose as set forth in Section 2, 29 U.S.C. § 202, counsels courts not to administer its injunction provisions "grudgingly." *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 327

(8th Cir. 1945); *see also* 29 U.S.C. § 217.

A temporary restraining order is necessary here to prevent further injuries to minor employees, including potentially debilitating or fatal injuries. *See Save Our Summers v. Wash. Dep't of Ecology*, 132 F. Supp. 2d 896, 905 (E.D. Wash. 1999) ("The risk of physical injury . . . is sufficient to establish a risk of irreparable harm."). The Court must act to end Defendants' employment of oppressive child labor and should grant a temporary restraining order enjoining Defendants from continuing to employ minor employees to debone poultry or perform labor that the Acting Secretary has identified to be hazardous to minors pursuant to the FLSA.

**2. Defendants' introduction of hot goods into the stream of interstate commerce causes irreparable harm to the Acting Secretary, employees, and the public.**

Defendants' introduction of hot goods into the marketplace will cause irreparable harm to the Acting Secretary, Defendants' employees, and the public. As the Supreme Court has explained, the purpose of the FLSA's hot goods provision is to "eliminate the competitive advantage enjoyed by goods produced under substandard conditions." *See Citicorp*, 483 U.S. at 36-37. The further these goods travel down the commerce stream and away from their unlawful source, the greater the difficulty there will be with the Acting Secretary's ability to police and stop the unlawful transportation of such goods. Thus, absent injunctive relief, the competitive advantage Congress sought to erase would be made permanent.

To that end, courts have regularly found irreparable harm where hot goods are at issue. As those courts have explained, allowing parties like Defendants to introduce goods that "have been produced under substandard labor conditions" unfairly allows them to "gain a competitive edge over similar products, pricing these products out of the market and causing irreparable harm to producers who do comply with the federal government's labor laws." *Acosta v. RK Apparel Inc.*, 2018 WL 1942400, at *3 (C.D. Cal. Mar. 15, 2018); *see also Herman v. Fashion*

*Headquarters, Inc.*, 992 F. Supp. 677, 680-81 (S.D.N.Y. 1998) (finding irreparable harm "wrought by the introduction of hot goods into the stream of commerce").

Accordingly, an injunction to stop Defendants from introducing hot goods into interstate commerce and a disgorgement deterrent is necessary and appropriate.

**3. Defendants' interference with WHD's child labor hot goods investigation causes irreparable harm to the Acting Secretary.**

The Acting Secretary, Defendants' employees and competitors, and the public broadly, will be irreparably harmed if Defendants are not enjoined from their continued efforts to thwart the Acting Secretary's child labor hot goods investigation. Defendants have stymied the Acting Secretary's ability to conduct her investigation, prejudicing her ability to prosecute this case, protect minor employees, and ensure the stream of commerce is free from contraband. Their actions also prejudice the Court's judicial fact-finding process. Moreover, Defendants' actions irreparably harm the public at large. Critically, Defendants' law-abiding competitors, whose businesses are undercut by Defendants' unfair and unlawful business practices, will be adversely affected. *See Danneskjold v. Hausrath*, 82 F.3d 37, 40 (2d Cir. 1996) ("[O]ne of the primary purposes of the FLSA" is "preventing unfair competition among employers if some were able to pay less than the minimum wage").

To ensure an even playing field for law-abiding businesses, protect consumers from consuming goods tainted by oppressive child labor, and enable the Acting Secretary to fulfill her mission to protect vulnerable workers, the government should be entitled to conduct its investigation without interference from Defendants. The Acting Secretary should be able to investigate whether any person is engaged in employing oppressive child labor or whether child labor hot goods have been shipped or delivered for shipment as is her Congressional

mandate, and the FLSA requires Defendants to comply. Defendants have continuously refused to produce the records and provide the information WHD needs to determine whether hot goods are so that contraband does not enter the stream of commerce, and what profit they have obtained from the illegal shipment of hot goods to disgorge these ill-gotten gains.

A temporary restraining order is crucial to prevent irreparable harm to Defendants' employees, the Acting Secretary, and the public.

**C. The balance of equities strongly favors the Acting Secretary.**

The balance of equities tilts sharply in the Acting Secretary's favor, and entering a TRO is decidedly in the public interest. *Cal Pharms. Ass'n v. Maxwell-Jolly*, 572 F.3d 847, 657-58 (9th Cir. 2009) (the court may consider the last two *Winter* factors together). In considering the balance of equities in a case involving the Secretary, "the Court 'must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private right.'" *Perez v. Jie*, 2014 WL 1320130, at *2 (W.D. Wash Mar. 31, 2014) (quoting *Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 802 (9th Cir. 1981)). "On the other hand, Defendants do not have a legitimate interest in violating the FLSA." *Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *4.

Further with respect to the hot goods injunction, the balancing of the potential injuries to the Acting Secretary and Defendants weighs soundly in favor of the Secretary. First Defendants can point to no legal right to profit from oppressive child labor. Second, an injury to the Acting Secretary, who is charged with enforcing the FLSA's minimum working standards, is an injury to the public at large. On the other side of the scales lies the comparatively negligible hardship to Defendants who will be barred from placing hot goods into interstate commerce. Such a hardship is merely pecuniary, in that they may not receive as much money for the goods as they had hoped, a result that is in no way unjust or unexpected under the circumstances of this case. The requirements on employers not to employ

children in hazardous jobs under the FLSA – a federal law that has been in existence for over eighty years – should come as no surprise to Defendants.

## IV. CONCLUSION

The Acting Secretary respectfully asks the Court to enter a Temporary Restraining Order prohibiting Defendants from any further use of oppressive child labor and interference with the Secretary's investigation, to restrain Defendants from shipping or delivering for shipment child labor hot goods, and to order specified relief to remedy Defendants FLSA violations. The Acting Secretary prays the Court enters an Order to Show Cause why a Preliminary Injunction should not issue.

The Secretary submits herewith a Proposed Order.

March 30, 2024

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

MARC A. PILOTIN
Regional Solicitor

ANDREW J. SCHULTZ
Counsel for Wage and Hour

SONYA P. SHAO
Senior Trial Attorney

*/s/ Nisha Parekh*

NISHA PAREKH
KARINA WEGMAN-SCHAAFF
Trial Attorneys